UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CROWDER LAWN AND GARDEN, | ) | |
| GERALD CROWDER, and | ) | |
| NANCY CROWDER, | ) | |
|     *Plaintiffs*, | ) | 1:09-cv-00581-JMS-DML |
| | ) | |
|     *vs.* | ) | |
| | ) | |
| FEDERATED LIFE INSURANCE COMPANY, | ) | |
|     *Defendant.* | | |

## **ORDER**

Plaintiffs Crowder Lawn and Garden, Gerald Crowder, and Nancy Crowder ("Plaintiffs") claim that Defendant Federated Life Insurance Company ("Federated") is estopped from denying a claim under the disability insurance policy for their deceased son and employee, Randall. [Dkt. 1-1 at 3.] Presently before the Court is Federated's Motion for Summary Judgment. [Dkt. 31.]

### I.
### STANDARD OF REVIEW ON SUMMARY JUDGMENT

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would—as a matter of law—conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial...against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial and cannot rely upon the mere allegations or denials in the pleadings. Fed.

R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 317. The key inquiry is the existence of evidence to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

## II.
### FACTUAL BACKGROUND[1]

Gerald Crowder ("Gerald") and Nancy Crowder ("Nancy") operate Crowder Lawn and Garden, and are the parents of non-party and now-deceased, Randall Crowder ("Randall"). [Dkt. 32 at 1.] Crowder Lawn and Garden employed Randall at all relevant times.

On or about February 28, 2007, Adam Coole ("Agent Coole"), acting as an agent for Federated, met with Randall in the presence of Gerald and Nancy to discuss insurance policies. During the meeting, Agent Coole discussed "key-man employee" insurance with the Crowders and explained that this type of insurance would pay their business if Randall got sick and had to miss work. [Dkt. 59-3 at 3.] This way, they would have money to hire someone in Randy's place. [*Id.*] At the end of the meeting, Randall and Agent Coole completed Federated's application entitled "Life and Disability Income Application" ("Application"). [Dkt. 32 at 2.]

On the application, Randall was asked and answered various questions concerning his health. He denied having any diseases or having been treated for any conditions. [Dkt. 33-1 at 6.] Specifically, the application asked, "Within the past 5 years, have you had, been told you had, or received treatment for . . . Asthma, Emphysema, Chronic Bronchitis . . . other Respiratory Disorder . . . [or] Intestinal Disorder?" [Dkt. 39-1 at 6.] Randall responded "no." [*Id.*] Although he admitted that he smoked cigarettes, he did not answer the questions concerning the

---

[1] Plaintiffs agree with Federated's explanation of the timeline of events in this case. [Dkt. 59 at 2.] Where no dispute over facts exists, the Court will cite to Federated's brief, unless it is proper to address evidence directly.

frequency of his smoking. [*Id.*] Randall signed the application, which included, among others, the following specific terms:

- I represent that the statements and answers given in this application are true, complete, and correctly recorded.

- Except as provided in the Temporary Insurance Agreement (if issued), any policy issued on this Application shall not take effect unless all of the following conditions have been met: (a) the full first premium is paid; (b) the Owner has personally received the policy during the lifetime of and while the health of each Proposed Insured remains unchanged from the date of the application; and (c) all of the statements and answers given in this Application are true and complete as of the date of Owner's personal receipt of the policy.

- No agent, marketing representative, telephone interviewer, or medical examiner is authorized to determine insurability, modify or waive any terms of this application or waive any of the Company's rights or requirements.

- Knowledge of any fact not disclosed on this application on the part of any agent, marketing representative, telephone interviewer, medical examiner, or other person will not be considered knowledge by the company.

[*Id.* at 8.]

In accordance with the application, an initial premium of $250.00 was due on February 28, 2007. [Dkt. 32 at 4.] Nancy issued a check on the account of Crowder Lawn and Garden that day. [*Id.*] The premium gave Randall "temporary" insurance coverage until the policy was approved—Agent Coole told Nancy and Gerald that this money would be used to "check out Randy medically to see if they could issue that policy[.]" [Dkt. 59-1 at 6.]

On March 1 and 2, 2007, Federated's underwriting department reviewed the application. [*Id.* at 5.] On March 7, 2007, Federated performed a telephone interview of Randall, in which he confirmed the information he had written on his application, wherein he denied having or being treated for any medical conditions. [*Id.*] He said that he had visited the Town Square Clinic but that "this was a long time ago, nothing major." [Dkt. 33-6 at 3.] Randall said he had no illnesses

or treatments, and that he had seen no doctors, specialists, or therapists in the last five years. [*Id.* at 1-5.] Finally, he noted that he smoked half a pack of cigarettes per day. [*Id.*] Federated therefore approved the Policy at the "Standard Tobacco" rate. [Dkt. 33-7.]

On March 9, 2007, Federated issued the disability income policy ("Policy"), [dkt. 33-8], and sent it to Agent Coole, [dkt. 33-9]. On March 22, 2007, Agent Coole delivered the policy to Randall, whereupon Randall signed the Acknowledgement of Acceptance and Delivery of Policy. [Dkt. 32 at 6; dkt. 33-10] Specifically, Randall acknowledged that he understood and agreed that "all coverage will only exist under this policy after [the owner and insured] ha[d] read and accepted this policy offer." [Dkt. 33-10 at 3.] Likewise, he acknowledged, "I am not aware of any information, other than disclosed in the application, which might affect the Company's willingness to make this offer," and he represented that "there have been no changes in (a) my health, or (b) the way I would respond to any question (if asked again on the signed date below." [*Id.*]

Also at that time, Agent Coole told the Crowders that Randall had checked out medically and that the policy would be in effect when the premium amount of $1,012.19 was paid, pursuant to the Policy Transmittal Letter. [Dkt. 32 at 7; dkt. 59-3 at 5; dkt. 33-9.] Nancy then wrote a check for the premium amount on the account of Crowder Lawn and Garden, [dkt. 33-13]. [Dkt. 32 at 7; dkt. 33-13.] With this payment, Gerald and Nancy believed that Crowder Lawn and Garden had a key-man policy in place for Randall. [Dkt. 59-1 at 6.]

As indicated on the front page of the paperwork in bold letters, the policy for which Randall applied, and the policy that Randall was actually issued on March 9 was an individual disability policy. [Dkt. 33-8 at 2.] Once in effect, the policy would pay a disability benefit of $600.00 per month, plus a social insurance supplement rider of $900.00 per month to age 67.

[Dkt. 33-8 at 4.] Under its terms, Randall had a 10-day right to examine and return the policy before paying a premium—a right that was reflected in bold print on the first page of his policy. [Dkt. 33-8 at 1.] The policy further gave Randall, as owner, the opportunity to assign the policy or change its ownership, to cancel the policy any time upon notice, and to change its beneficiaries. [*Id*. at 8-9.] Also under the policy's terms, Federated maintained the right to contest and revoke the policy for two years (and longer in the case of fraudulent misrepresentation in an application). [Dkt. 33-8 at 9.]

On May 16, 2007, Federated received a call from Agent Coole regarding the Initial Claim of Randall Crowder. [Dkt. 33-14.] The Initial Claim Report indicated that Randall's disability was cancer, and that it began on May 2. [*Id*. at 2.]

The next day, Brenda Dolan, Federated's Life and Disability Income Claims Specialist, sent a letter to Randall acknowledging the claim, requesting that certain forms be completed, asking for additional information and documentation, and advising him of Federated's right to contest the policy because the claim was incurred within two years of the policy effective date. [Dkt. 33-15.]

In response, Randall Crowder submitted only some of the requested documents, many of which were only partially completed, so Ms. Dolan sent him another letter on June 18 requesting the missing documents and the completion of others. [Dkt. 33-16.] She followed up with a phone call the next month. [Dkt. 33-17.] In the meantime, Federated collected records from Randall Crowder's treating doctors and clinics, which included Town Square Clinic, Dr. Huh, Dr. Haerr, Dr. Sing, Dr. Morse, and West Central Hospital. [Dkt. 32 at 9-10.]

Based on Federated's review of Randall's medical records and underwriting references, the company found that, as of the date he submitted his application, Randall in fact had troubling

medical conditions, including Chronic Obstructive Pulmonary Disease ("COPD"), bronchitis, and consistently bloody stools. [Dkt. 33-28.] The company learned that as early April 2003, Randall began receiving treatment for COPD or Emphysema and Chronic Bronchitis. [Dkt. 33-19.] By 2006, Randall had been scheduled to undergo a gastro-intestinal consult and a colonoscopy to assess the nature of his consistent gastro-intestinal problems. [*Id.* at 5.] Thereafter, Randall continued to be seen by several doctors for his respiratory and gastro-intestinal conditions, which became progressively severe until May 2007, when he was diagnosed with esophageal/gastric cancer. [*Id* at 5-6.; dkt. 33-27 at 2.] Randall failed to disclose any of his symptoms, his diagnosed conditions, or his treatment to Federated—either on his application or in his follow-up interview. [Dkt. 33-1; dkt. 33-6.]

Had Federated known about Randall's health conditions or upcoming medical treatment when he submitted his application, the company would have "at least" postponed the issuance of his policy until he had undergone the recommended evaluative procedures. [Dkt. 33-3 at 4; dkt. 33-19 at 3.] In light of the medical information Federated discovered about Randall (which Randall knew prior to applying for insurance), Federated ultimately determined that it would have initially declined Randall's policy in its entirety due to his history of COPD and his continued use of cigarettes. [*Id.*]

Federated rescinded his policy via mail and email on August 13. [Dkt. 33-19.] At that time, Federated refunded the $1,262.19 premium paid by Nancy. [*Id.* at 3; dkt. 33-20.]

On February 22, 2008, Agent Coole informed Federated that Randall had not received the premium refund check, whereupon Federated reissued the check. [Dkt. 33-24.]

Randall died of cancer on September 2, 2008. On September 11, Gerald called Federated and told the company that he wanted to collect on the key-man policy he bought for his son.

[Dkt. 33-26 at 2.] Gerald further stated that he had continued to pay Randall's salary the entire time he was sick and not working. [*Id*.] Federated indicated that there was no coverage in force and that Gerald Crowder should submit his concerns in writing. [*Id*.]

### III.
#### DISCUSSION

Plaintiffs argue that on February 28 and March 22, Agent Coole represented to Gerald and Nancy that he was selling Plaintiffs a key-man insurance policy. [Dkt. 59 at 6-7.] They further argue that when Randall became sick and began missing work, they relied on the alleged misrepresentation to their detriment by continuing to pay his salary. [*Id.* at 6-7.] Therefore, they argue that Federated is estopped from enforcing the provisions of Randall's disability life insurance policy, [dkt. 65], and that the company must reimburse Plaintiffs $44,000 for wages paid to Randall during the time he was sick and out of work. [Dkt. 1-1 at 6.]

Federated argues that it never had a contract with Plaintiffs, such that Plaintiffs have no standing to sue under the policy. [Dkt. 32 at 2.] Even if they could, Federated maintains, equitable estoppel does not apply.[2]

---

[2] In the formal papers of record, Plaintiffs did not initially specify a cogent legal theory supporting Count I of their Complaint (the only remaining count). [Dkt. 1-1 at 2-4.] On December 16, 2010, the Court therefore ordered Plaintiffs to file a statement of their legal theory, and in response Plaintiffs articulated an equitable estoppel claim. [Dkt. 64.] Thereafter, both parties where given the opportunity to be heard at oral argument regarding the equitable estoppel claim. [Dkt. 65.] Because the Plaintiffs' claim was not specified a the time it filed its Motion for Summary Judgment, Federated waged arguments that no longer apply to Plaintiff's claim. The Court will not address them because they are now moot—e.g., that Plaintiffs fail to state a claim under Indiana law. [Dkt. 60 at 2.]

### A) Do Plaintiffs Have Standing to Bring the Claim?

Standing exists when the plaintiff suffers an actual or impending injury, no matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury. *Bauer v.* Shepard, 620 F.3d 704, 708 (7th Cir. 2010).

Federated argues that the policy issued and later rescinded by Federated named Randall Crowder, not Nancy or Gerald, as the beneficiary, so that only the former has an interest in this claim. [Dkt. 32 at 16.] Furthermore, Federated argues, assuming Randall had a valid claim against Federated, and assuming the claim survived his death, the only entity capable of properly bringing this suit would be Randall's Estate and Personal Representative—not Plaintiffs. [*Id.*]

Plaintiffs, however, are neither challenging the rescission of the policy as to Randall, nor making claim under his policy. [Dkt. 59 at 8.] Rather, they claim that Agent Coole's alleged misrepresentation of the policy induced them to continue paying Randall when he became sick and could no longer work. [*Id.* at 7.] Because their alleged reliance on Federated caused Plaintiffs to lose $44,000, Plaintiffs argue that they are the proper individuals to bring the claim.

Since Plaintiffs' allege that their harm was caused by Federated's agent and that the harm would be redressed by a judgment in their favor, Plaintiffs have standing as the proper parties to bring this claim. *Bauer*, 620 F.3d at 708.

### B) Is Federated Estopped from Enforcing the Insurance Policy?

A claim for equitable estoppel requires the Plaintiff to show that there was 1) a representation or concealment of material fact; 2) made by a person with knowledge of the fact and with the intention that the other party should act upon it; 3) to a party ignorant of the matter; and 4)

which induced the other party to act upon it to his detriment.[3] *Ottinger v. Sawyer*, 883 N.E.2d 1212 (Ind. Ct. App. 2008). Additionally, the Court must consider that the doctrine of estoppel is designed to bring about justice where, without it, injustice might result. *Am. Standard Ins. Co. of Wisconsin v. Rogers,* 788 N.E.2d 873, 879 (Ind. Ct. App. 2003).

Defendants do not dispute that elements two and three are met here. Therefore, the Court only need assess whether Plaintiffs can make a showing that elements one and four are present and that injustice would result without implementing this doctrine.

**1. Was There a Misrepresentation Or Concealment of a Material Fact?**

Indiana law allows for recovery under equitable estoppel where an insurance agent misrepresented coverage provided under an insurance contract. *Vernon Fire & Casualty Co. v. Thatcher*, 285 N.E.21d 660 (1972).

Plaintiffs argue that on February 28, Agent Coole misrepresented the disability insurance policy for which Randall applied as a key-man insurance policy for which Plaintiffs would be insured. Specifically, Plaintiffs allege that Agent Coole asked them about key-man insurance and then explained that this insurance would pay the business if Randall got sick and had to be off of work—"[i]n effect, the policy would pay the shop so that Gerald and Nancy could pay Rand[all] his salary and hire someone else to do Rand[all]'s work." [Dkt. 59 at 3.]

---

[3] Plaintiffs contend in their statement regarding their legal theory, and further contended at the subsequent hearing, that a theory of equitable estoppel paves the way for a claim of constructive fraud. [Dkt. 65 at 2.] Federated, however, was never put on notice of a constructive fraud claim, which must be pled with particularity under Fed. Rule 9(b). *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997.) Plaintiffs cannot amend their Complaint in a response brief, and—by extension—they cannot do so at oral argument. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). Since Plaintiffs did not include any specific allegations of fraud in their Complaint, [dkt. 1-1], the Court need not, and will not, address their allusion of a constructive fraud claim against Federated. *General Elec.,* 128 F.3d at 1079.

Despite this claim, however, Plaintiffs here failed to proffer any evidence that Agent Coole misrepresented the policy that he actually presented to Randall and which Randall alone signed. Randall was the only person who ever read, asked to read, or signed the application on February 28—across the top of the application he alone signed appeared the words "DISABILITY INCOME APPLICATION" written in bold capital letters. [Dkt. 33-1 at 3.] Neither do Plaintiffs explicitly accuse Agent Coole of telling them that the application Randall filled out was a key-man insurance policy application, nor do they argue that Agent Coole's silence as to the type of insurance application Randall signed constituted a misrepresentation.

When Agent Coole returned to the Crowders' home to collect the premium on March 9, he delivered to Randall a policy entitled, "DISABILITY INCOME POLICY," which had a header on the front page that read: "INSURED: RANDY D. CROWDER." [Dkt. 33-8 at 2.] There is no evidence in the record that Agent Coole misrepresented this policy as a key man insurance policy. At most, Agent Coole told Nancy that Randall had "checked out" medically and that the policy would be in effect when the premium was paid, and that, consequently, Nancy paid the premium. [Dkt. 59-3 at 5.] That Nancy paid the premium, however, has no bearing on the integrity of this representation as a disability insurance policy held by Randall. Again, Plaintiffs do not argue that Agent Coole's silence about the policy was itself misrepresentative.

Based on the evidence presented, the Court cannot find that Agent Coole misrepresented Randall's disability insurance policy. On a motion for summary judgment, Plaintiffs bear the burden of presenting evidence to support each element of their claim—their inability to come forth with evidence that Agent Coole in fact misrepresented the policy Federated issued Randall is fatal. *Celotex*, 477 U.S. at 323 (holding that Rule 56(c) requires summary judgment "against a

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Because Plaintiffs cannot show that Federated misrepresented or concealed a material fact, their claim that Federated is estopped from enforcing the policy fails as a matter of law.

**2. Were Plaintiffs Reasonably Induced To Act on the Misrepresentation to Their Detriment?**

Even if they could show that Federated misrepresented or concealed a material fact, Plaintiffs cannot show that they suffered a detriment as a result of relying on any such misrepresentation.

In their most recent filing, Plaintiffs argue:

> Agent Coole first represented to Gerald and Nancy Crowder that if they gave his company a check for [$250.00] Randy would be "checked out" medically to determine if a key man policy could be issued to them. He then represented to Gerald and Nancy Crowder [two] weeks later that Randy had "checked out" medically and that an insurance policy would be in place once they wrote a check to Federated for [$1,012.19] for the remainder of the insurance premium. Gerald and Nancy relied upon these representations, wrote a check to Federated and paid the policy's annual premium. And Federated cashed the check. This is detrimental reliance.

[Dkt. 64 at 2.] Furthermore, they argue that they suffered harm insofar as they paid Randall his salary when he was off work expecting to be repaid by Federated. [Dkt. 59 at 8.]

The first issue, then, is whether Plaintiffs suffered a detriment with respect to their payment of the premium. In this vein, the Supreme Court has established that a party must identify the manner in which reliance has caused the party to change his position for the worse. *Willis v. Warren Tp. Fire Dept.*, 762 N.E.2d 484, 487 (Ind. Ct. App. 1996). Here, the premium was refunded in full, [dkt. 30-20 at 2], and Plaintiffs did not incur any additional cost from Federated. Thus, Plaintiffs cannot show that they suffered a detriment with respect to costs paid to Federated.

The second issue is whether Plaintiffs suffered a detriment by continuing to pay Randall in light of their expectations of an enforceable key-man policy. To this point, Federated asserts, and Plaintiffs do not dispute, that in order to establish detrimental reliance under Indiana law, Plaintiffs must make some showing that they gave up a meritorious claim; forgoing a meritless claim causes no detriment. *See also Shields v. Local 705, Intern. Broth. Of Teamsters Pension Plan*, 188 F.3d 895 (7th Cir. 1999). Here, Plaintiffs concede that even if they had been issued a key-man policy, Federated could have properly rescinded that policy upon investigation of Randall's medical records. [Dkt. 33-3 at 4.] Indeed, either policy would have enabled Federated to evaluate Randall's medical records—Plaintiffs have offered no evidence to suggest that an evaluation under either policy would have yielded anything other than a revocation. Because both a disability insurance policy and a key-man policy could have been properly rescinded, irrespective of Plaintiffs' alleged reliance on Agent Coole's representation, Plaintiffs have not shown that they could pursue a meritorious claim under either. As such, they did not suffer a detriment based on a meritorious claim.

Even if Plaintiffs had suffered a detriment, their reliance on Agent Coole's representation would not have been reasonable in light of the clear language in the insurance contract. The Seventh Circuit has held that although a party to an insurance contract is not bound to complex or incomprehensible language, an insured party is bound to examine insurance documents to the extent that it would be reasonable under the circumstances. *Level 3 Communications, Inc. v. Federal Ins. Co.*, 168 F.3d 956, 959 (7th Cir. 1999). Here, Plaintiffs conceded at oral argument that they did not attempt to obtain or read the policy issued before paying Randall's wages. Moreover, this Court's review of the documents revealed a relatively clear policy that clearly demarcated Randall as both the insured and the policy owner. [Dkt. 33-8.] In this context,

wholesale reliance on an agent's alleged representations juxtaposed with utter disregard for the clearly written policy is not reasonable.

Therefore, the Court finds that Plaintiffs suffered no detriment, and that even if they had, their reliance on Agent Coole's representations alone would not have been reasonable.

### 3. Do the interests of justice require estoppel?

The doctrine of estoppel is designed to bring about justice where, without it, injustice might result. *Am. Standard Ins. Co.,* 788 N.E.2d at 879. As Plaintiffs point out, equitable estoppel "shuts the door against the assertion of a right where that would result in doing a wrong to some other person, or where in good conscience and honest dealing a person ought not to be permitted to gainsay his previous conduct." *Indiana Law Encyclopedia*, Equitable Estoppel, sec. 21.

Here, Plaintiffs argue that Federated should be estopped from enforcing Randall's policy because they reasonably believed "Rand[all] had no medical conditions or history after Agent Coole told them Randall 'checked out medically.'" [Dkt. 59 at 9.] As such, they say they are blamelessly bearing the burden of injustice.

Nevertheless, Plaintiffs have offered no evidence to dispute that Randall significantly misrepresented his medical conditions on his disability life insurance application. [Dkt. 33-1 at 6-9.] Nor do they dispute that Federated issued Randall's policy in reliance on those representations. [Dkt. 33-8; dkt 33-3 at 4.] Not only did Randall fail to qualify for the policy he actually received, but also Plaintiffs have failed to show that he might have qualified for the policy that they thought he received absent his misrepresentations. [Dkt. 33-3 at 4.]

The Court does not deny that Plaintiffs suffered significant financial loss. But equity only requires that Federated be held accountable for Randall's misrepresentations to the extent that Federated benefited from those misrepresentations. By refunding the premium, Federated ne-

gated any benefit that it initially received. The Court will not hold Federated accountable beyond that amount by denying it the power to enforce the policy according to its terms in light of accurate information. Equity requires the Court to remedy injustice, but there is no injustice to be remedied here.

Because Plaintiffs have failed to show either that the elements of equitable estoppel are met or that the interests of justice require it, the Court finds that Federated is not estopped from enforcing Randall's policy as written.

## V.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Federated's Motion for Summary Judgment on Count I of Plaintiffs' complaint. [Dkt. 31.] Judgment will issue accordingly.

01/12/2011

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Gary G. Hanner
HANNER HANNER & HANNER
ghanner@hannerlaw.com

Donald G. Orzeske
GOODIN ORZESKE & BLACKWELL, P.C
dorzeske@goblaw.com

Stephanie Michelle Payne
GOODIN ORZESKE & BLACKWELL, P.C
spayne@goblaw.com